Venton Smith
4304 18th Street. Unit 14036
San Francisco, California 94114
(909)-306-6981
ventonsmith@gmail.com

Pro-Se.

**FILED**

**JUL 22 2026**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO DIVISION)

CV26-07582

**VENTON SMITH,**

Civil Case No: _____

**AGT**

Plaintiff,

V.

**SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT ("BART"), SPECIAL
PURPOSE DISTRICT;SEIU LOCAL 1021,
UNINCORPORATED LABOR ORGANIZATION;
SHANISE SHAIFER, individually; JOHN
ARANTES, individually; RAYMOND FIELDS,
individually; PHALA WILLIAMS, individually;
and DOES 1 through 15, inclusive,**

**Defendants.**

### COMPLAINT

**VIOLATIONS OF FEDERAL LABOR LAW,
BREACH OF FIDUCIARY DUTY,
AND WHISTLEBLOWER RETALIATION**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

Venton Smith, proceeding pro-se, hereafter ("Plaintiff") brings this action against San Francisco Bay Area Rapid Transit District ("BART") and Service Employees International Union Local 1021 ("SEIU Local 1021"), together with the individual Defendants named herein, for violations of federal labor law, breach of fiduciary duty, and unlawful retaliation.

## I. PARTIES

1. Plaintiff Venton Smith is a BART System Service employee and SEIU Local 1021 member, candidate for M/W Line Steward.

2. Defendant BART is a special district created under California Public Utilities Code § 28500 et seq., a recipient of federal transit funding, and Plaintiff's employer.

3. Defendant SEIU Local 1021 is a labor organization within the meaning of 29 U.S.C. § 402(i), (j).

4. Defendant Shanise Shaifer, individually, holds three concurrent SEIU positions: Overtime Monitor (or by and through proxies), Line Steward, and Chief Steward second-in-command. Shaifer is a BART employee.

5. Defendants Arantes and Fields, individually, are Chapter President and Vice President of SEIU Local 1021, and are BART employees, both serving on paid release time under Article 20.0, § 20.1 of the 2021–2027 Labor Agreement.

6. Defendant Phala Williams, individually, is a BART employee and SEIU Local 1021 member.

7. The true names and capacities of Defendants sued as DOES 1 through 15 are presently unknown to Plaintiff. Plaintiff will amend this Complaint to state their true names once ascertained.

## II. JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. § 1331 as to all counts arising under federal law. Count V proceeds under the leave-of-court mechanism of 29 U.S.C. § 501(b). Count IV arises independently under 31 U.S.C. § 3730(h).

## III. VENUE

9. Venue is proper in this District under 29 U.S.C. § 412 and 28 U.S.C. § 1391.

## IV. EXHAUSTION AND FUTILITY

10. Plaintiff filed six written complaints: June 29, 2026, to BART General Manager Powers and Assistant General Manager Jones, regarding overtime conflict of interest; July 3, 2026, to the SEIU Local 1021 Ethics Liaison and Ethics Ombudsperson; July 5, 2026, to the SEIU Ethics Department, BART's Labor Division, Rutherford, and Masiak; July 6, 2026, to BART, regarding Watson's interference with Plaintiff's campaign; July 7, 2026, to BART, regarding a threat of bodily harm, false hostile work environment filings, and a records request; and July 16, 2026, to BART's HR Director, HR Manager, and Labor Relations, naming Williams, Shaifer, and Arantes. True and correct copies of these six complaints are attached hereto as **Exhibit D.**

11. No defendant investigated, responded substantively, or took corrective action in response to any of these six complaints.

3

12. Shaifer has refused to speak with Plaintiff. Shaifer has made false complaints about Plaintiff to BART's Workplace Violence Office. Shaifer occupies the Overtime Monitor, Line Steward, and Chief Steward second-in-command positions.

13. Plaintiff grieved directly to Arantes and Fields. Both sided with Shaifer.

14. The ordinary claims process presumes a functioning system: accurate, contemporaneous records against which a member can identify and timely file a claim for a missed overtime opportunity. That system did not exist here. No records were kept contemporaneously; the required prior-year records were destroyed by routine annual practice, and what was eventually produced was generated after the fact. Plaintiff could not have identified, or timely filed, individual claims for violations he had no means of discovering within any ordinary claims window. Any presumptive filing deadline is tolled or excused as to Plaintiff for this reason.

## V. FACTUAL ALLEGATIONS

15. Shaifer holds three concurrent SEIU positions: Overtime Monitor, Line Steward, and Chief Steward second-in-command, establishing a conflict of interest.

16. Section 14.1(E) of the 2021–2027 BART/SEIU Local 1021 Labor Agreement, attached as **Exhibit K, p. 10**, requires that overtime "shall be on a voluntary basis and shall be rotated equally among employees who normally perform said functions during the regular schedule." Shaifer diverted overtime hours outside this required order to a fixed inner circle. Shaifer bartered with monitors on other lines. Supervisory staff pressure Overtime Monitors to contact Shaifer, Knox, and other inner circle members directly, outside the authority Rule 2 assigns to the Overtime Monitor role. Shaifer created special work projects and placed herself and inner circle members on the resulting work lists

4

outside the standard rotation. These actions violate the CBA and continue an ongoing scheme depriving Plaintiff of overtime opportunities, and the financial gains they carry, that he was entitled to under the required rotation.

17. The Union removed Shaifer from the overtime list. Shaifer placed Carlos Knox in charge of the list, attached hereto as **Exhibit F, p. 2.** The list was transferred from Knox to the Chief Steward's office, the office in which Shaifer serves as second-in-command. Shaifer created this circular transfer as a strategy of deliberate confusion, moving the list from herself to Knox to the Chief Steward's office as a method of continuing the fraudulent scheme alleged herein and concealing it from Plaintiff.

18. Section 14.1(H) of the 2021–2027 BART/SEIU Local 1021 Labor Agreement, attached as **Exhibit K, p. 10,** states: "The steward, in conjunction with the District shall maintain and post any overtime and holiday overtime lists." This is a binding contractual obligation running jointly to Shaifer, as steward, and to BART directly. Neither maintained nor posted the overtime list on the M/W Line for an extended period preceding this action. The June 13, 2017 System Service Overtime Scheduling Rules, attached as **Exhibit B, p. 1-2.,** bear Arantes's signature and implement this same obligation. Plaintiff requested this document from Shaifer and Fields; both refused. Plaintiff obtained a copy through an informal photograph.

19. Arantes directed the Chief Steward's office to investigate Shaifer's conduct. Shaifer serves as that office's second-in-command, and has access to filed complaints and grievances concerning her own conduct, which she circulates to her friends via email, text, and chat. BART Chapter Bylaws § 23.F, attached hereto as **Exhibit A**, states a person connected to a complaint should not sit on the body deciding it.

5

20. Plaintiff requested SEIU Local 1021's overtime records concerning Shaifer, including in his written complaints filed June through July 5, 2026, to quantify the overtime opportunities diverted from him. On July 6, 2026, during a telephone call, Fields told Plaintiff that SEIU Local 1021 destroys all prior-year records at the beginning of each year, meaning the 2025 records had been destroyed at the start of 2026. On July 7, 2026, Plaintiff emailed Fields to memorialize the call, titled "Record of July 6, 2026 telephone call"; Fields replied that Plaintiff's account was false and asked Plaintiff to call him, declining to confirm anything in writing. A true and correct copy of this exchange is attached hereto as **Exhibit J.**

21. After Plaintiff began requesting overtime distribution records, Arantes requested Shaifer's phone records. Williams stated in writing, attached hereto as **Exhibit G,** that Arantes's request was made because of Plaintiff. Shaifer then submitted phone logs purporting to document calls beginning January 2026; these logs were generated after the fact and do not correspond to any records contemporaneously maintained.

22. Carlos Knox stated to other male BART employees, whose identities are withheld to protect them, his desire to beat Plaintiff up, to beat him to death, or to have someone murder him. Plaintiff reported this in writing on July 7, 2026, and separately to BART's Workplace Violence Office. The Workplace Violence Office stated it would likely be unable to act without witness names. The witnesses have requested confidentiality.

23. BART conducted an interview of Plaintiff regarding the reported threat. The interviewer, a stand-in, became upset with Plaintiff when Plaintiff would not disclose the identities of his information sources. Plaintiff stated he did not want those sources to experience

6

retaliation, referencing the retaliation he was experiencing from BART employees, and Shaifer's and Williams's continued dissemination of false information.

24. In an email exchange attached hereto as **Exhibit I**, Arantes accused Plaintiff of creating a hostile work environment. Plaintiff responded that Shaifer files false hostile-work-environment reports against him while she herself routinely brings a firearm onto BART property. Shaifer's possession of a firearm at work, raised by Plaintiff before the July 15, 2026 meeting, is inconsistent with the fear of Plaintiff she later claimed at that meeting.

25. Shaifer, as Overtime Monitor, worked closely with Watson. Watson repeatedly approved overtime for the same narrow group. Watson did not escalate the pattern. Shaifer's friendship with Watson prevented the reporting of irregularities in Shaifer's and her circle's accumulated overtime hours to Coggshaw. BART's Labor Relations office did not receive this information.

26. No key exists for the union board. Plaintiff posted campaign flyers on the wall next to the board. Watson removed and discarded these flyers while working her graveyard shift. Watson sent an email to staff regarding the flyers, attached hereto as **Exhibit H**. Plaintiff complained to BART on July 6, 2026. Coggshaw advised Plaintiff to use the union board. Plaintiff posted flyers on the glass covering the board, since no key existed. Watson posted an SEIU Local 1021 sign on the board. Watson is a member of the Amalgamated Transit Union ("ATU"), not SEIU Local 1021. Arantes, on the resulting email thread, attached hereto as **Exhibit H**, stated Plaintiff had no right to post anything on the board.

27. On July 10, 2026, in a personal group chat among approximately eighteen employees, attached hereto as **Exhibit E**, Williams referred to Plaintiff as a "snitch" and a "rat."

Williams was on the clock and paid by BART. Anthony Perez wrote in this chat that Williams and Shaifer specifically could accuse Plaintiff of sexual harassment. Shaifer read this message in real time. Plaintiff had already been removed from this chat when these statements were made.

28. On July 11, 2026, a separate chat, attached hereto as **Exhibit F**, was created. On July 14, 2026, Carlos Knox was discussed in this chat as administering the overtime list. On July 15, 2026, hours before the meeting, Williams posted a message in this same chat inviting members to a meeting to discuss "the hostile workplace environment." Shaifer responded, "thank you for the reminder."

29. On July 15, 2026, from 5:00 p.m. to 7:30 p.m., a meeting was held online. It was prearranged for other business. Arantes and Fields attended on paid union release time, compensated by BART for the meeting; Shaifer and Williams attended while on their BART shifts, abandoning their work responsibilities and assignments to do so. These four used a portion of the meeting to conduct a retaliation campaign against Plaintiff, on the pretext that his campaign flyers created a hostile work environment, without identifying any act Plaintiff had actually committed. They encouraged members to file hostile-work-environment complaints and police reports against Plaintiff, turning BART's Workplace Violence Office, Police Department, and administrative complaint processes into instruments against him. This conduct exceeded the bounds of protected union activity: by weaponizing the public employer's own safety and disciplinary systems against a whistleblower, Defendants engaged in conduct actionable against BART, not merely an internal union matter.

8

30. At this meeting, Arantes called Plaintiff a "psychopath" and a "bully." Arantes stated Plaintiff could be terminated for filing a false complaint about Shaifer. Arantes stated Plaintiff had 216 overtime hours and characterized this as the second highest on the line, while withholding the hours of Shaifer and Knox, the comparators necessary to test the claim. Arantes had access to the actual figures. That Plaintiff cannot presently establish the true ranking is a direct result of the concealment alleged herein. Arantes praised Shaifer's phone logs as good record keeping.

31. At this meeting, Fields stated that confidential investigations involving Plaintiff would be occurring, disclosing to the assembled members the existence of investigations identifying Plaintiff as their source.

32. At this meeting, Shaifer stated she is afraid to come to work and fears for her life and her children's safety. Shaifer stated Plaintiff looked at her in a manner she described as scary or crazy. Shaifer stated she might file sexual harassment charges against Plaintiff. Shaifer did not describe any specific conduct.

33. On July 18, 2026, at 1:50 p.m., Shaifer entered the same break room as Plaintiff. Plaintiff immediately exited the break room for fear of another false accusation.

34. At the July 15, 2026 meeting, Williams and Shaifer raised the possibility of false sexual harassment claims against Plaintiff.

35. On July 16, 2026, Plaintiff filed a written complaint with BART HR and Labor Relations, naming Williams, Shaifer, and Arantes. A true and correct copy is attached hereto as part of **Exhibit D**.

36. Theresa Rutherford is the President of SEIU Local 1021 and oversees all chapter presidents, including Arantes. Rutherford received Plaintiff's July 5, 2026 written

9

complaint naming Arantes. SEIU Local 1021's Ethics Department received Plaintiff's July 3, 2026 complaint regarding Shaifer. SEIU Local 1021 took no action against Arantes, Fields, or Shaifer following these reports.

37. Arantes and Fields serve on paid release time under Article 20.0, § 20.1 of the 2021–2027 Labor Agreement, p. 94, attached as **Exhibit C**. The Minute Clarification, p. 96, states these are full-time released positions.

38. BART's own Office of the Inspector General, in an audit report dated June 13, 2025, found that union representatives responsible for allocating overtime document that process outside BART's own timekeeping system, in records not easily accessible to BART management, and that BART's prior investigations had already found supervisors "actively enabling" misconduct that allowed employees to substantially inflate their overtime earnings. This warning was general in scope, not specific to Shaifer, but placed BART on notice of the precise structural conditions that in fact allowed Shaifer's scheme to continue undetected. BART implemented no safeguard responsive to this warning before or during the period alleged herein.

39. A separate, independent finding corroborates this pattern of institutional resistance. A May 1, 2026 report by the Contra Costa County Civil Grand Jury, titled "Independence Delayed, Independence Denied," found that a BART executive's challenge to the OIG's authority caused the OIG to halt a retaliation investigation for several months, and that BART has not adopted written policies affirming the OIG's authority to investigate retaliation without prior executive approval. This independent finding, issued during the period of the conduct alleged herein, reflects a broader institutional pattern of resistance to independent scrutiny of retaliation at BART, consistent with the conduct alleged in this

10

action. This report is a public document and is referenced herein without attachment as an exhibit.

40. Plaintiff is not an exception to the rule, but the ordinary pathway is unavailable to him, and he is entitled to file a claim now, while this litigation remains pending. Section 14.1(H) obligates BART and SEIU Local 1021 to maintain a functioning claims pathway. Filing and processing an overtime claim under this pathway is a normal course of business SEIU Local 1021 and BART routinely afford to their members; it does not require a court proceeding to be enforced under ordinary circumstances, and Plaintiff, as a paying member, is entitled to nothing more than what would already be provided him absent the conflict of interest described herein. That pathway cannot be administered through the ordinary union channel here, because the officials who would normally administer it, Shaifer, Arantes, and Fields, are Defendants in this action. BART and SEIU Local 1021 must open this pathway to Plaintiff now, processed through Defendants' counsel, a court-appointed monitor, or another neutral party the Court deems appropriate to ensure BART's and SEIU Local 1021's obligations under Section 14.1(H) are properly fulfilled, providing all relevant documentation and tolling any applicable filing deadline, so that Plaintiff's claim may proceed concurrently with this action rather than being delayed until its conclusion.

41. The independent audit requested herein and the claims pathway requested herein serve distinct functions. The audit, applying the rotation rules and regulations to each day Shaifer, Knox, or other inner circle members received overtime out of order, is necessary to determine the scope and dollar value of the violations described herein, since Plaintiff has been denied access to the records that would otherwise allow him to calculate this

11

figure himself. The claims pathway is necessary because, independent of the audit's findings, Plaintiff is entitled to file and pursue a claim now, through the ordinary contractual mechanism Section 14.1(H) provides, without waiting for the audit's completion. The two remedies are complementary, not duplicative: the pathway allows Plaintiff to file now; the audit ensures that whatever pathway processes his claim, and any future claim by him, has accurate, independently verified records to act upon.

42. Article 21.0's arbitration provisions grant an arbitrator authority, where a grievance is sustained, to "fashion an appropriate remedy that does not conflict with provisions contained in this Agreement," attached hereto as **Exhibit K**, p. 13-14. This remedial authority is consistent with the make-whole standard broadly recognized in federal labor law, under which an employee harmed by a contract violation is entitled to be restored to the position he would have occupied absent the violation, including payment of wages wrongfully denied. Plaintiff seeks this same measure of relief: compensation for each overtime opportunity Shaifer diverted from him in violation of Section 14.1(E), quantified through the independent audit requested herein.

## VI. CAUSES OF ACTION

## COUNT I - Labor-Management Reporting and Disclosure Act ("LMRDA") Title I, 29 U.S.C. §§ 411, 412 (SEIU Local 1021 and Williams)

43. Plaintiff realleges the foregoing paragraphs.

44. Plaintiff's exposure of the overtime scheme and candidacy constitute protected activity under 29 U.S.C. § 411(a)(2).

45. The retaliation was planned by Williams and Shaifer, as shown by their own written communications, and carried out through the concerted action of Arantes and Fields, each of whom came prepared with information specific to Plaintiff and no other member, while acting in their official capacity and on BART's paid time. Rutherford, who oversees Arantes as Chapter President, received a written report naming him before this meeting occurred and took no action.

46. Plaintiff is entitled to relief under 29 U.S.C. § 412.

## COUNT II - Breach of Duty of Fair Representation (SEIU Local 1021)

47. Plaintiff realleges the foregoing paragraphs.

48. SEIU Local 1021 owed Plaintiff a duty of fair representation under Vaca v. Sipes, 386 U.S. 171 (1967), breached through the conflicted investigation, the refusal to produce records, and the routine annual destruction of records the Labor Agreement requires be maintained, a duty owed to the membership harmed by the scheme, not to Shaifer individually.

49. Plaintiff was unable to timely identify and pursue claims for lost overtime wages.

## COUNT III - Hybrid Section 301/Duty of Fair Representation (BART and SEIU Local 1021, jointly)

50. Plaintiff realleges the foregoing paragraphs.

51. Section 14.1(H) of the 2021–2027 Labor Agreement, attached as **Exhibit K**, requires the steward, in conjunction with BART, to maintain and post the overtime list. No overtime records were contemporaneously maintained or posted; the required prior-year records are destroyed as a matter of routine annual practice, and the records later produced were

13

generated after the fact rather than kept contemporaneously. Because these funds are drawn from BART's public operating budget, this absence of recordkeeping violates a binding contractual obligation running to both Shaifer, as steward, and BART directly.

52. The failure to post and the routine destruction of required records are SEIU Local 1021's own administrative failures. BART's breach is independent: as the entity disbursing public funds, BART bears its own stewardship duty that cannot be discharged by delegating recordkeeping to the union.

53. This breach, paired with SEIU Local 1021's breach in Count II, gives Plaintiff standing under DelCostello v. Teamsters, 462 U.S. 151 (1983), and has deprived him of overtime wages in an amount to be proven at trial. Because the ordinary contractual claims pathway remains unavailable to Plaintiff for the reasons stated above, Plaintiff is entitled to pursue this claim now, through the mechanism requested herein, rather than await resolution of this action.

## COUNT IV - False Claims Act ("FCA") Anti-Retaliation, 31 U.S.C. § 3730(h) (BART)

54. Plaintiff realleges the foregoing paragraphs.

55. Plaintiff investigated Shaifer's diversion of overtime wages in violation of Section 14.1(E)'s requirement that overtime "be rotated equally among employees," concealed by the failure to fulfill Section 14.1(H)'s posting requirement, both provisions of the 2021–2027 Labor Agreement, attached as **Exhibit K.** This investigation is protected activity under 31 U.S.C. § 3730(h), implicating the truthfulness of BART's certifications of compliance with 49 U.S.C. § 5333(b).

14

56. BART's own interviewer responded to Plaintiff's protected refusal to disclose confidential sources with hostility during BART's investigation of the reported threat. BART's disciplinary process received retaliatory complaints against Plaintiff.

## COUNT V - LMRDA Title V, 29 U.S.C. § 501(b) (Shaifer, Arantes, Fields, individually; PENDING LEAVE OF COURT)

57. Plaintiff seeks leave of this Court to file this claim through the Motion for Leave filed concurrently herewith. This Count is not properly before the Court until leave is granted.

58. Plaintiff realleges the foregoing paragraphs to the extent the Court determines appropriate.

59. Shaifer, Arantes, and Fields owed fiduciary duties under 29 U.S.C. § 501(a) and the SEIU Local 1021 Code of Ethics Policy, attached hereto as **Exhibit A-1**. Shaifer diverted overtime wages to herself and her circle. Arantes praised Shaifer's phone logs as good record keeping and selectively disclosed Plaintiff's overtime hours while withholding those of Shaifer and Knox. Fields disclosed confidential investigation details identifying Plaintiff as the whistleblower.

60. Plaintiff will separately move this Court for leave to file this claim.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award compensatory damages, including back pay for diverted overtime wages and emotional and mental distress, in an amount to be determined at trial;

15

B. Order restitution and an accounting under 29 U.S.C. § 501 as to Count V, upon grant of leave to proceed;

C. Enjoin Shaifer and Williams from any position with authority over overtime distribution or unsupervised access to BART's disciplinary and safety systems, and BART from permitting such involvement;

D. Order BART to take protective action on reported threats without requiring disclosure of confidential witness identities as a precondition;

E. Order an independent audit, scoped as a contractual compliance review applying Section 14.1(E)'s required rotation to every overtime assignment on the M/W Line from August 2025 to the present, comparing each recipient's accumulated hours against Plaintiff's at the time of assignment, and quantifying the wages owed to him as a result, to inform and support, but not serve as a precondition to, the claims pathway requested in Item F below;

F. Order that Plaintiff may file a claim for overtime wages diverted in violation of Section 14.1(E) immediately, during the pendency of this litigation and independent of the audit requested in Item E, as the ordinary course of business BART and SEIU Local 1021 already provide their members, processed through Defendants' counsel, a court-appointed monitor, or another neutral party the Court deems appropriate, given the conflict of interest described herein, with all relevant overtime and payroll documentation produced and any applicable filing deadline tolled;

16

G. Enter injunctive relief appointing a temporary independent monitor, at shared expense, to verify overtime distribution until a fully operational online electronic verification system, to be implemented within ninety (90) days, is functional;

H. Award attorneys' fees and costs as provided by statute;

I. Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: July 21, 2026.

Venton Smith, pro-se.

17

**EXHIBITS**

**Exhibit A  -  BART Chapter Bylaws (September 29, 2012)**

**Exhibit A-1  -  SEIU Local 1021 Code of Ethics Policy (September 29, 2019), § (a), § (c), p. 1**

**Exhibit B  -  System Service Overtime Scheduling Rules (June 13, 2017)**

**Exhibit C -  2021–2027 BART/SEIU Local 1021 Labor Agreement, Article 20.0, § 20.1**

**Exhibit D  -  Plaintiff's written complaints, June 29 – July 16, 2026 (six documents)**

**Exhibit E  -  July 10, 2026 group chat**

**Exhibit F  -  July 11–15, 2026 chat**

**Exhibit G  -  Written statement of Phala Williams**

**Exhibit H  -  Watson email and related email thread**

**Exhibit I  -  Email exchange between Plaintiff and Arantes regarding hostile-work-environment accusation and Shaifer's firearm on BART property**

**Exhibit J  -  Email thread, "Record of July 6, 2026 telephone call," Plaintiff to Fields, with Fields's reply**

**Exhibit K  -  2021–2027 BART/SEIU Local 1021 Labor Agreement, Article 14.0, § 14.1(E), (H).**

18